Ms. Hopper, that microphone captures what you say for the record, but does not amplify your voice. So, would you kindly keep it up? Yes, Your Honor. I would like at this time to reserve two minutes for rebuttal. The Montana Supreme Court unreasonably applied clearly established federal law as determined by the United States Supreme Court when they applied a transport standard to a non-transport case. Mr. Porter was brought into the courtroom by his jailers. Mr. Porter was sat down at the defense counsel's table. Mr. Porter was in handcuffs in front of the entire jury panel, some of which were seated in the jury box. The jailers then walked away. Mr. Porter remained at the defense counsel's table until his public defender joined him. His public defender walked up to the defense counsel's table, noticed the handcuffs, walked over to the jailers and requested that those handcuffs be removed. The jailers then stood up, walked over to Mr. Porter, and escorted him out of the courtroom in the presence of the jury panel. This was a prolonged sequence of events. How long? Do we have any indication from the record how long this took? No, Your Honor. There's no indication in the record of the jury remembering any of that time? In formal session, no. The jury remembered Mr. Porter being escorted, excuse me, the jurors who were paneled or who testified at the evidentiary hearing. Over two years later, remembered Mr. Porter being brought back into the courtroom without handcuffs. The juror testimony during that evidentiary hearing showed an actual prejudice against Mr. Porter. The jurors' statements that he was dangerous, that he needed to be secured for their safety. Just a second, Ms. Hobbard. You say that there's actual prejudice shown by the record. I see here that there was a prospective juror at ER 23. Counsel, does he appear to be an innocent man to you as he sits there right now? Juror, yes. Counsel, and why is that? Juror, I haven't heard any facts. Does that show prejudice? That was a potential juror, Your Honor. That was not a juror that was on the jury. That was during voir dire. That was a potential juror? Correct. Well, but why isn't that evidence that if he didn't feel prejudice, maybe nobody else felt prejudice? Nobody else was asked, Your Honor. The public defender proceeded to ask the jury panel, but interrupted himself with another question. The judge was not made aware of the fact that the jury was seen, excuse me, Mr. Porter was seen by the jury in handcuffs in the courtroom. It never once mentioned that Mr. Porter was in the courtroom when he was observed in handcuffs. Let me try to make sure I understand this. We've got a statement by the Montana Supreme Court that says that Porter has failed to establish any prejudice. You're telling us that there's specific evidence in the record. You understand under EPTA you need clear and convincing evidence to overcome a factual finding by the state court. What evidence is there that you think is incorrect? The actual statements of the jurors, Your Honor. When asked, what does it mean to you when Mr. Porter was shown in handcuffs that he needed to be controlled? What does it mean to you when a defendant needs to be controlled that he must be dangerous? Those are actual statements of the jurors. Were those statements about Porter? Yes, Your Honor. In the course of the trial, he wasn't in handcuffs. Are we to believe the jurors inferred from that he must not be dangerous? I'm sorry, Your Honor. During the trial itself, he was not in handcuffs. Every time the jurors saw him thereafter, he was not in handcuffs. I understand a statement that says, well, somebody's in handcuffs because they're dangerous. Did we infer that they think, okay, he's not in handcuffs, he must not be dangerous? Your Honor, he was brought into the courtroom and the first time the jurors observed him, he was in handcuffs. You never get a second chance to make a good first impression. The public defender was objectively unreasonable in his assistance of counsel. It is standard procedure as recognized by DEC and by the United States Supreme Court that is a long-held rule, that it is inherently prejudicial for the jury to view the defendant in handcuffs, that he may be branded as dangerous. Do we know anything from the defense counsel why he chose not to object? I understand that his understanding of the Montana case law was that it wouldn't be successful, but do we know anything? For example, he might have thought the jury veneer panel was a friendly one. He might have liked the composition of the people that were drawn. There are lots of reasons why somebody might elect not to pursue that objection under those circumstances. Yes, Your Honor, and those would be deemed to be a tactical decision. The public defender recognized that it was his ignorance, his not knowing of any cases where it would have succeeded. No other reason than that? No, Your Honor. This was an extremely close call. The evidence was weak. What? Close call. There was weak evidence in this case. The jury acquitted Mr. Porter of one count and upon a motion after the prosecution's case in chief, the court dismissed three counts against Mr. Porter. The charges against Mr. Porter consisted of violence, which goes to his propensity and character to commit those crimes. Upon viewing Mr. Porter in restraints, the jury had adjusted their lens and viewed Mr. Porter in that light. Therefore, we respectfully ask this court to reverse the court below and to direct that the writ of habeas corpus issue. Thank you. Mr. Paulson? May it please the Court, the Fifth Amendment due process argument provides an interesting backdrop for this case, but in essence this case is a Sixth Amendment case. It concerns the right to the effective assistance of counsel, and it's also a habeas case, which means that the focus is properly on the decision of the Montana Supreme Court. Now, with respect to ineffective assistance claims, there is clearly established federal law, of course, in the Strickland v. Washington case, which requires Porter to show both deficient performance and prejudice. Judge Malloy and Magistrate Judge Erickson both concluded that the Montana Supreme Court's clearly established federal law from the Supreme Court in the Strickland case. The lower court concluded that the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented. Now, with due respect to opposing counsel, I don't think the record reflects quite the same circumstances as earlier represented. How long was Mr. Porter viewed in handcuffs? Well, it's very uncertain, but it was only moments according to defense counsel's testimony at the evidentiary hearing. The facts are fairly straightforward and not essentially in dispute. Mr. Porter was in jail at the time. He was brought into the courtroom by the detention officers and seated at counsel's table. And when his attorney arrived a few moments later, he found his client seated at the table with his hands in handcuffs below the table. He saw that he was still in handcuffs, asked the detention officer to escort Mr. Porter outside the courtroom, which was accomplished right away, and he was returned then to the courtroom without restraints. There were no other restraints, incidentally. The Montana court's determination that there weren't any other restraints, certainly no shackles, belly chains, or anything of that sort, I think is fully supported in the record. And I don't know that there's any dispute with respect to the nature of the restraint involved here. To the extent that there's a factual dispute, it appears focused on the reaction of the prospective jurors, those who became jurors, the potential prejudice from what they saw. Could you address that? Yes. First of all, this occurrence happened before the trial started, and there were some of the prospective jurors in the courtroom, obviously, some of them witnessed the fact that the defendant had been brought in with handcuffs. As the court has already noted, Mr. Standerson, the defendant's to bring this matter up during voir dire, and he questioned one of the prospective jurors about his reactions to seeing his client in handcuffs. And that prospective juror said that it didn't change or affect his opinion of his client, that his client, as far as he was concerned, was still an So that didn't change his view. Two years, or almost two and a half years, I guess, after the trial, in connection with this claim, there was a state court evidentiary hearing at which several of the actual jurors testified. Only two of them had any recollection at all that the defendant had been in And she said that she was aware that the defendant had been in handcuffs. She thought there might possibly have been other restraints, but she had confused the matter in her own mind after seeing a movie called The Fugitive with Harrison Ford, and so she wasn't really sure that there was any other she stated that it did not prejudice her view of the case in any matter whatsoever, and that she recalled that the jurors did not bring the matter of restraints up at any point during their discussions. Now, counsel for Mr. Porter, at that point in time, asked several hypothetical or speculative type questions. What does it mean to have handcuffs on somebody? And the jurors answered in like form. Well, it means that most of them, at least the two that responded, said that they thought it was procedure. It was just normal procedure for transporting somebody back and forth from the jail, but at some point, the discussion turned to whether or not there was a need for control of the inmate, and whether or not there could be a possibility of danger, but that was all speculation. Not one of the jurors indicated that they considered Porter to be a particularly dangerous man, at least at that juncture. Mrs. Sather indicated that after she heard the evidence at the But it wasn't from the sight of him momentarily in handcuffs before the trial started. It was the result of hearing all of the evidence concerning the incident for which he was being tried. On the issue of deficient performance, the trial hasn't started yet. If there was any time to make a motion for a mistrial and have it granted, it would be before the jury were in panel, and it would have been easier to get a grant of a mistrial at that point, wouldn't it? I mean, you'd just have to get rid of this jury panel and bring another jury panel in. Possibly it would, Your Honor. How does that affect our decision as to whether on the first prong of Strickland there was deficient performance? Well, counsel was aware of the Montana Supreme Court decisions in the Bowe case, the Pendergrass case, and the Schatz case, which indicated that some sort of actual prejudice would have to be shown in order for there to be a right to a mistrial. And he chose to explore the matter during voir dire rather than, I suppose he could have brought the matter to the attention of the trial court before the trial commenced, and then proceeded with some sort of in-chambers examination of the prospective jurors to determine if their view of the defendant had altered their opinion of him. But he didn't do that. He decided to explore the matter on voir dire, and he was satisfied from his questioning of prospective juror Madison that there was no actual prejudice that could be shown. So you're, I don't want to put words in your mouth, but that was a tactical decision made by counsel knowing the Montana Supreme Court cases saying a glimpse of handcuffs is not shackling, unconstitutional shackling, and I'd rather take my chances in voir dire, maybe establish actual prejudice, and then just make a motion outside the presence of the jury. That's correct. I think the record fully supports that view of Mr. Sanderson's actions under the circumstances. Well, is there a downside? The record, I take it, does not show that he thought to bring a motion would bring some disadvantage. He thought the motion wouldn't succeed. But that's not quite the same as a decision which would say, and I'll use the same hypothetical, an attorney could look at the panel and say, look, I might be able to object to it, but I like this panel. I like the people I see out there, so I'm going to give up the possibility of objecting and go ahead and take my chances with this group. Now, that's one kind of decision. It's another kind of decision. It can be a valid professional decision, but there really wasn't anything to lose, as I understand what he said. He just didn't think the motion would be successful, wasn't conscious of what U.S. Supreme Court decisions said with regard to, I mean, U.S. Supreme Court case law with regard to shackling during trial, the defendant doesn't have the burden of demonstrating actual prejudice. And so he wasn't thinking of those cases. He was thinking of the Montana cases, and his conclusion was, it doesn't do me any good to bring that motion. It's going to fail. I'm just going to move on to the next thing. Now, that's a tactical decision of another kind, because it's based on a perhaps limited awareness of the case law. It's not based on, I know I've got the right to object, but I'm not going to, because I'm going to lose something if I object. I want to make sure I'm clear on this. I'm not aware of anything in the record that counsel consciously thought, I don't want to bring this motion, because I'm going to lose something. Is that your understanding? Counsel didn't think that the motion would have had any merit, and that he would have been entitled to a mistrial under those circumstances. Now, Montana Supreme Court decisions, of course, are based on federal law. This occurred before Deck v. Missouri, but nonetheless, there were indications The U.S. Supreme Court case law was clear before that. The real difference, as I understand it, Montana cases focus on transportation, that is, in transit. And this could be arguably in transit, because what probably happened is that whatever officer was responsible just didn't take off the handcuffs when he was supposed to take them off. Yes. But from the jurors' perspective, the jurors didn't see transport. The jurors saw somebody sitting at the table in the courtroom, and the argument being made on behalf of the petitioner is that that pushes it toward the trial side of the line, as opposed to the transport side of the line. Well, they did see transport, Your Honor. They saw him being brought into the courtroom. They saw him exit the courtroom a few moments later in the accompaniment of the detention officers. And I think the record supports the conclusion that defense counsel made a strategic decision not to bring this matter up in the form of a panel. That's where I want to stop you, because that's what I was trying to go for. I don't understand this as being a strategic decision where he elects to give up something he knows he can pursue because he doesn't want to lose this panel or for some other reason. That's the kind of decision we recognize that sometimes you just make the wrong choice. In this case, he didn't understand that he might have a meritorious motion to bring. He thought the motion would be unsuccessful, and so he didn't bring it. And so it's not like, I know I've got this ability to object, but I choose not to because I've got this other reason. It's he didn't understand, perhaps, that he had the ability to object and to clear out the panel and start from the beginning. He did express at the evidentiary hearing another reason for why he did what he did, and that was that he, as a practice in his criminal defense work, he did not want to call the jury's attention unduly to the fact that his client was in jail. He thought that by belaboring the point that this would... Could he have brought that motion at a sidebar or requested some session with the court outside the presence of the panel? I think he could have. I think certainly under Montana law, he had the right... I understand the practical sense that if he doesn't think he's got a chance, there's no point in bringing up a feudal motion. He's going to have a meritorious motion and thought he should proceed with it. There would have been ways to do it where he could have tried to ensure against the downside. Yes, that's true. I've exhausted what time you had left and kept you going. If you have a conclusion you'd like to offer, you may proceed. Your Honor, I think we've covered the important points. I would urge the court to affirm Judge Malloy's denial of the habeas petition. I think that the defense attorney was correct in his assessment of the case and that there has been no showing that his representation was either deficient or that any prejudice resulted from his decision. Thank you. Ms. Hopper? Thank you. The state brings up the fact that the jurors claimed they were not prejudiced, but the United States Supreme Court in Holbrook has held, quote, that little stock need be placed in the jurors' claim to the contrary when citing to inherent prejudice. Even though the practice may be inherently prejudicial, jurors will not necessarily be fully conscious of the effect it will have on their attitude towards the accused. The juror for a case handled an automatic weapon in his condition under the circumstances, if he had a flash temper or if they didn't understand his personality, and you've got one policeman on, it would seem to me that you would want the man secured for our safety. The judge was not given the opportunity to give a curative instruction. The judge was not made aware of the fact that the jury had seen Mr. Porter in the courtroom in handcuffs. The damage had already been done. Thank you. Now, what do we do with, as you know, we're under a deferential standard of review under EFTA, which means that we have to conclude that the decision of the Montana court was objectively unreasonable. What leads you to argue that the problem here reaches that standard? The fact that the Montana Supreme Court failed to take any of the jurors' statements of prejudice into account. They were not mentioned in their record. Thank you. Thank you. I thank both counsel and counsel-to-be for their arguments. Welcome to the Ninth Circuit. We hope to see you back here in the future. Thank the law school for the program and for taking on pro bono cases, and thank all attorneys for the arguments in this interesting case.
judges: Farris, Clifton, Bea